JS 44C/SDNY
REV. 12/2005

**CIVIL COVER SHEET**

Judge Pauley          08 CV 00433

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS**
Leonard Ramen, individually and as Administrator of Estate of Natasha Ramen

**DEFENDANTS**
New York City, Police Dept of N.Y.C, Charles Hynes, Brooklyn DA office, Richard Brown, Queens DA

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Law Office of Peter Traub
107 Grand Street, 4th Floor
NY NY 10013  (212-966-7442).

**ATTORNEYS (IF KNOWN)**
Unknown   JAN 17 2008

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
Title 42 §1983. Deprivation of rights under 14th Amendment US Constitution plus Pendant State claim via special relationship - Wrongful Death.

Has this or a similar case been previously filed in SDNY at any time? No ☑  Yes ☐   Judge Previously Assigned

If yes, was this case  Vol☐  Invol. ☐  Dismissed. No☐  Yes ☐   If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*          NATURE OF SUIT

**ACTIONS UNDER STATUTES**

**TORTS**

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**
[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**FEDERAL TAX SUITS**
[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**ACTIONS UNDER STATUTES**

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[X] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $_____ OTHER _____   JUDGE _____ DOCKET NUMBER _____

*Check YES only if demanded in complaint*
JURY DEMAND: ☑ YES ☐ NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

*(PLACE AN  x  IN ONE BOX ONLY)*                    **ORIGIN**

[X] 1 Original Proceeding  [ ] 2a. Removed from State Court  [ ] 3 Remanded from Appellate Court  [ ] 4 Reinstated or Reopened  [ ] 5 Transferred from (Specify District)  [ ] 6 Multidistrict Litigation  [ ] 7 Appeal to District Judge from Magistrate Judge Judgment

[ ] 2b. Removed from State Court  **AND** at least one party is a pro se litigant

*(PLACE AN  x  IN ONE BOX ONLY)*          **BASIS OF JURISDICTION**          *IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*
[ ] 1 U.S. PLAINTIFF    [ ] 2 U.S. DEFENDANT    [X] 3 FEDERAL QUESTION (U.S. NOT A PARTY)    [ ] 4 DIVERSITY          *(28 USC 1332, 1441)*

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Leonard Roomen
89-53 210th Place
Queens, NY 11427

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

See Attached.

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [X] FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE          SIGNATURE OF ATTORNEY OF RECORD          ADMITTED TO PRACTICE IN THIS DISTRICT
                                                        [ ] NO
                                                        [X] YES (DATE ADMITTED Mo. 8  Yr. 83 )
RECEIPT #                                               Attorney Bar Code # ~~————————~~

Magistrate Judge is to be designated by the Clerk of the Court.

*GORENSTEIN*

Magistrate Judge _____ is so Designated.

J. Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED

**DEFENDANTS:**

CITY OF NEW YORK
100 Church Street
New York, New York

NEW YORK CITY POLICE DEPARTMENT
One Police Plaza
New York, New York

KINGS COUNTY DISTRICT ATTORNEYS OFFICE
350 Jay Street
Brooklyn, New York

CHARLES HYNES
350 Jay Street
Brooklyn, New York

QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
125-01 Queens Blvd.
Queens, New York 1415

RICHARD A. BROWN
125-01 Queens Blvd.
Queens, New York 1415

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York

LEONARD RAMEN, as Administrator of the Estate of
NATASHA RAMEN, a/k/a MOLLY RAMEN,
Deceased, AND LEONARD RAMEN, Individually        **SUMMONS IN A CIVIL ACTION**
Plaintiffs
      V.

THE CITY OF NEW YORK, THE NEW YORK CITY CASE NUMBER:
POLICE DEPARTMENT, THE KINGS COUNTY
DISTRICT ATTORNEY'S OFFICE, CHARLES
HYNES, THE QUEENS COUNTY DISTRICT
ATTORNEY'S OFFICE, and RICHARD BROWN
Defendants.

TO: (Name and address of Defendant)

SEE ATTACHED LIST

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

PETER PEARSON TRAUB, JR., ESQ.
TRIAL COUNSEL TO STEVENS & MOSZCZYNSKI
107 GRAND STREET, 4TH FLOOR
NEW YORK, NEW YORK 10013
(212) 966 7442

an answer to the complaint which is served on you with this summons, within _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

_____    _____
CLERK                  DATE

_____
(By) DEPUTY CLERK

**DEFENDANTS:**

CITY OF NEW YORK
100 Church Street
New York, New York

NEW YORK CITY POLICE DEPARTMENT
One Police Plaza
New York, New York

KINGS COUNTY DISTRICT ATTORNEYS OFFICE
350 Jay Street
Brooklyn, New York

CHARLES HYNES
350 Jay Street
Brooklyn, New York

QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
125-01 Queens Blvd.
Queens, New York 1415

RICHARD A. BROWN
125-01 Queens Blvd.
Queens, New York 1415

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
LEONARD RAMEN, as Administrator of the Estate of
NATASHA RAMEN, a/k/a MOLLY RAMEN, Deceased,
AND LEONARD RAMEN Individually

                 Plaintiffs,

          -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, THE KINGS COUNTY
DISTRICT ATTORNEY'S OFFICE, CHARLES HYNES,
THE QUEENS COUNTY DISTRICT ATTORNEY'S
OFFICE, and RICHARD BROWN

                 Defendants.
-----------------------------------------------------------------------X

**COMPLAINT**

CV No.:

**TRIAL BY JURY**
**DEMANDED**

     The Plaintiffs, by their attorney, the Law Office of Peter P. Traub, Esq., alleges upon information and belief, as follows:

### JURISDICTIONAL STATEMENT

1.     The Decedent NATASHA RAMEN, a/k/a MOLLY RAMEN resided in County of Queens, State of New York, at the time of her death on March 15th, 2007.

2.     The Surrogate's Court, Queens County, granted Letters of Administration on May 15th, 2007 to LEONARD RAMEN.

3.     At the date and time of her death, the Decedent NATASHA RAMEN, a/k/a MOLLY RAMEN and LEONARD RAMEN were lawfully wed as man and wife.

4.     The actions denominated as "Federal" herein arise under the United States Code Title 42 Section 1983 in as much as the defendants, jointly and severally, acted under color of State law and deprived the decedent and the plaintiff herein of the rights and privileges secured by the Constitution and laws thereunder.

5.  This actions denominated as " Federal" herein arise under the Fourteenth Amendment to Constitution of the United States as more fully appears.

6.  The jurisdiction of this Court for all Causes of Action denominated as " Federal" herein is invoked pursuant to Title 28 Section 1343(a)(3) inasmuch as these causes of action are brought to redress the deprivation, under color of State law, statute, ordinance, custom and usage, the rights and privileges of the Decedent and the Plaintiff herein secured by the Constitution of the United States and Acts of Congress providing protection and redress for same.

7.  The jurisdiction of this Court for all Causes of Action denominated as " Federal" herein is further invoked pursuant to Title 28, Section 1331 inasmuch as these causes of action arise under the Constitution and Statute of the United States.

8.  The jurisdiction of this Court is further invoked pursuant to Title 28, Section 1367 for all causes of action arising under State law as may more fully appear herein.

9.  That this action falls within one or more exceptions set forth in CPLR 1602.

10. At all times relevant and material herein, the Defendant CITY OF NEW YORK was, and still is, a municipal corporation, duly organized and existing under and by virtue of the Laws of the State of New York.

11. The District Attorneys, and their servants, agents, employees, and Assistant District Attorneys were employed by the County in which they served and at all times herein were employees of the City of New York.

12. The New York City Police Department is a municipal department of the City of New York.

13. That prior hereto on June 13, 2007, and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and place where the injuries and damages were sustained, together with Plaintiff's demands

2

for adjustment thereof was duly served on the claimant's behalf on the Comptroller for the City of New York, as well as the District Attorneys' Offices, the District Attorneys, and the New York City Police Department, and that thereafter said Comptroller for the City of New York refused or neglected for more than thirty (30) days, and up to the commencement of this action, to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

14.     That at no time have the Defendants, pursuant to General Municipal Law 50(h), requested a hearing from LEONARD RAMEN at the Office of the Comptroller or elsewhere.

15.     That this action is being commenced within one year and ninety days after accrual of this cause of action, or within the time allowed by law.

## STATEMENT OF FACTS

16.     The incident arose on March 15, 2007 at approximately 8:00am at 90-29 186th Street, Queens, New York 11423, and at other times prior thereto from May 22nd 2005 to March 15th, 2007.

17.     On May 22nd 2005 Natasha Ramen, Nee Kandhai, was brutally raped and assaulted by Hemant Megnath.

18.     On April 26th, 2006 at the arraignment in Kings County of Hemant Meganth, in acknowledgement of the genuine fear for the safety and well being of Natasha Ramen, the Court issued an order of protection in favor of Natasha Ramen, and against Hemant Meganth, and the City of New York thereby assumed, by these promises and actions, an affirmative duty of protection as a result of their

3

knowledge, tacitly admitted by the seeking and granting of the aforementioned order of protection, that inaction could lead to harm.

19.    Hemant Meganth continued to harass the decedent and her family, forcing her to move to a new location out of fear for her well being, said municipality and its agents having been informed of this decision and the reasons therefore.

20.    Hemant Meganth continued to harass the decedent and her family by contacting and calling the decedent's family threatening to kill the decedent and her family if they did not inform him of her whereabouts, and threatening to kill the decedent if she insisted on pressing charges of rape at his upcoming trial, that said threats were directly related to the decedent's potential testimony against Hemant Meganth at the scheduled trial on rape charges.

21.    In September and October of 2006 these threatening phone calls were made known to the municipality and the NYPD, including but not limited to a detective "Sheppard" (phonetic), with the decedent, her husband and her in-laws having brought this matter to the attention of the NYPD in late September and early October, 2006, and the NYPD promised to have Hemant Meganth "off the streets by Saturday", and advised the decedent she did not have to worry anymore.

22.    The family and the decedent diligently prepared the necessary paper work for the charges against Hemant Meganth's harassment, and sent it to the municipality, its servants agents and employees, who claimed never to have received same without advising the decedent or the family of same.

23.    At a second meeting with the NYPD attended to by the decedent and her family,

4

again the threats issued by Hemant Meganth were made known to the police, who promised to arrest Hemant Meganth and get him off the streets.

24.     Thereafter, under the belief that Hemant Meganth was in jail and " off the streets", the decedent relied upon such assurances to her detriment in believing she was now safe to resume her daily living routine, and the decedent continued to exhibit no signs of concern for her safety believing the decedent was incarcerated and " off the streets".

25.     From October 2006 to March 15th, 2007 the decedent did not hear from or about Hemant Meganth again, casing her to believe the promises of action issued by the NYPD were in fact being adhered by the municipality, and its agents, servants and employees.

26.     Following the arrest of Hemant Megnath in October 2006, the Queens District Attorney assumed responsibility for the prosecution of said individual and enforcement of the previously issued order of protection.

27.     At the pre-trial conference before the Court on 2/20/07, the Kings County DA, as the agent of the City of New York, had a continuing duty to keep the promises made by other City agents keep the rapist away from the decedent.

28.     The City of New York and its agents, servants, and employees, including the District Attorney (who is a local official according to the Public Officers Law), the police, and other city employees whose names are unknown to this claimant, acting in concert assumed an affirmative duty through promises or actions to act on behalf of the decedent, Natasha Ramen; said municipality, its agents servants

5

and employees acting in concert had knowledge that its inaction could lead to harm, that said municipality, its agents, servants and employees acting in concert had direct contact with the decedent and with those individuals charged by law or relationship to act as intermediary, and the decedent, relying on the promises, assurances, policies and procedures, believed and had reason to believe that she was safe form further injury or harassment from the rapist herein by reason of said contacts, promises and assurances by the municipality herein, as well as those servants, agents, and employees of the municipality acting in concert.

29.   The municipality, its servants, agents and employees, acting in concert failed to:

(a)  protect and secure the person of the decedent despite promises to the contrary,

(b)  failed to ensure her safety, failed to inform her that she was not safe,

(c)  failed to inform her that they released the rapist,

(d)  failed to inform her that the rapist (Megnath) was not " off the streets",

(e)  failed to communicate with each other,

(f)  failed to discharge the affirmative duty of protection voluntarily assumed herein,

(g)  failed to discharge their obligations imposed by departmental procedure relied upon in part by the decedent herein,

(h)  failed to discharge obligations imposed by code of conduct,

(i)  failed to bring material information to the court' s attention, hide, shielded, and otherwise withheld important information form the court,

(j)  failed to communicate with the decedent that they had failed to bring important information to the court's attention,

(k)  failed to enforce and adhere to the terms, conditions, expressed or implied, of the court issued protective orders,

(l)  failed to discharge their duty to take every step to ensure the rapist was incarnated and off the streets,

(m) failed to inform the decedent that they did not incarnate the rapist,

(n)  failed to enforce the terms and conditions of the protective order issued by the court,

(o)  failed to bring the violation of the protective order to the appropriate authorities,

(p)  failed to notify the decedent that they were not enforcing the protective order,

(q)  failed to keep the rapist a safe distance away from the decedent,

(r)  failed to provide the decedent with protection despite promising same,

(s)  failed to enforce the protective orders herein despite promising same,

(t)  failed to bring material facts before the appropriate tribunal, shielded material facts form the appropriate tribunal,

(u)  failed to communicate effectively with each other and with the decedent,

(v)  failed to discharge these duties imposed by law,

(w) failed to communicate with the decedent and her family,

(x)  failed to communicate effectively with each other so that the various agents servants, and employees of the municipality could effectively communicate

with each other, with the appropriate tribunal, and with the decedent's family, the servants, agents, and employees of the decedent, acting alone and in concert with each other,

(y) failed to act on the decedent's behalf,

(z) failed to act accordingly having knowledge that the failure to act could lead to harm, were aware that their inactions could lead to harm,

(aa) failed to advise the decedent that should take all necessary precautions for her safety and well being as they were not going to protect her with her rapist on the loose free to carry out his threats to kill or otherwise harm her for her participation in *People of the State of New York v Meganth.*.

30. As a result thereof, the decedent had her throat and other bodily parts cut with a weapon, was caused to suffer severe pain and mental anguish, fear of impending death, loss of enjoyment of life, limb and liberty, was allowed to bleed to death, suffocate, and otherwise die a consciously painful death, resulting in damages to her estate in the form of a survival action as well as a wrongful death action, including pecuniary loss to the estate's distributees, as well as claims by Leonard Ramen individually herein as indicated here and else where.

31. Decedent Ramen, sustained severe permanent personal injuries, the full extent of which is not presently known, including but not limited to, upon information and belief, injuries to the her body and person.

32. Claimant Leonard Ramen claims loss of the society, comfort and person of the decedent as well as mental suffering and anguish, and individually and in his

8

capacity as Administrator of the Estate of Natasha Ramen claims for personal injuries, hospital, physician and other medical expenses, pain and suffering, loss of quality and/or enjoyment of life, wrongful death, pecuniary loss, funeral bills and associated expenses, and all other damages to which claimant is entitled to by case law and statute.

### AS AND FOR A FIRST CAUSE OF ACTION
### (FEDERAL SURVIVAL ACTION)

33.    The Plaintiffs repeat, reiterate, and re-allege the allegations contained in paragraphs " 1" through " 32" as if fully set forth herein.

34.    As a result of the facts and circumstances alleged herein, a " Special Relationship" between the Plaintiffs and the Defendants was created.

35.    As a result of the facts and circumstances alleged herein, the Defendants assumed, through their promises and/or actions, an affirmative duty to act on behalf of the Plaintiff and the Decedent.

36.    As a result of the facts and circumstances alleged herein, the Defendants were aware that their failure to act in accordance with the duties assumed would lead to harm.

37.    As a result of the facts and circumstances alleged herein, the Defendants were in direct contact with the Decedent and the Plaintiffs, assuming the duty to act and place Megnath out of harm' s way.

38.    As a result of the facts and circumstances alleged herein, the Plaintiff and the Plaintiff' s Decedent justifiably relied upon the Defendants' promises to act,

protect, and make safe and otherwise fulfill their assumed affirmative duty to act, to the detriment of the Decedent and the plaintiff resulting in pain, suffering, and wrongful death.

39.   As a result of the facts and circumstances alleged herein, the Defendants affirmative actions and assumptions of duty increased the risk of the Plaintiff' s and Decedent' s danger or vulnerability resulting in great pain, suffering and wrongful death of the Decedent.

40.   As a result of the facts and circumstances alleged herein, the Defendants' actions placed the Decedent in a more vulnerable position exposing her to a further assault resulting in great pain, suffering and wrongful death.

41.   As a result of the facts and circumstances alleged herein, the Defendants' actions created a greater danger than otherwise existed by lulling the Plaintiff and the Decedent into a false sense of security thereby diminishing their ability or perceived need for protective measures, resulting in great pain, suffering and wrongful death.

42.   As a result of the facts and circumstances alleged herein, the Defendants violated the Fourteenth Amendment to the Constitution of the United States.

43.   As a result of the facts and circumstances alleged herein, the Defendants violated Title 42, Section 1983.

44.   By reason of the aforesaid, the Decedent NATASHA RAMEN was caused to suffer and sustain severe and permanent serious personal injuries, severe and serious pain and suffering and mental anguish; Decedent has been caused to

expend and become obligated to expend sums of money for medical services and related expenses, and has thereby been injured and damaged in an amount totaling ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION
### (STATE SURVIVAL ACTION)

45.   The Plaintiffs repeat, reiterate, and re-allege the allegations contained in paragraphs " 1" through " 44" as if fully set forth herein.

46.   As a result of the Special Relationship created between the Plaintiffs and the Defendants, and the Defendants collective failure to act, the Defendants' negligence in discharging their assumed duties, the Defendants were careless, negligent, reckless, under the circumstances then and there existing.

47.   By reason of the aforesaid, the Decedent NATASHA RAMEN was caused to suffer and sustain severe and permanent serious personal injuries, severe and serious pain and suffering and mental anguish; Decedent has been caused to expend and become obligated to expend sums of money for medical services and related expenses, and has thereby been injured and damaged in an amount totaling ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

## AS AND FOR A THIRD CAUSE OF ACTION
### (FEDERAL WRONGFUL DEATH ACTION)

48.   The Plaintiffs repeat, reiterate, and re-allege the allegations contained in paragraphs " 1" through " 31" as if fully set forth herein.

49.   That as a result of the defendants' violation of the Fourteenth Amendment to the United States Constitution and of Title 42 Section 1983, the Decedent was caused

11

to wrongfully die as a result of injuries sustained in the aforementioned incident.

50.     That as result thereof, the Decedent's beneficiaries were caused to sustain pecuniary loss.

51.     By reason of the Decedent's wrongful death, the Decedent's Estate has been damaged in the amount of ONE HUNDRED MILLION ($100,000,000.00) MILLION DOLLARS.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (STATE WRONGFUL DEATH ACTION)

52.     The Plaintiffs repeat, reiterate, and re-allege the allegations contained in paragraphs " 1" through " 51" as if fully set forth herein.

53.     That as a result of the defendants' violation, neglect, negligence, carelessness and reckless discharge of the duties assumed pursuant to the special relationship alleged herein, the Decedent was caused to wrongfully die as a result of injuries sustained in the aforementioned incident.

54.     That as result thereof, the Decedent's beneficiaries were caused to sustain pecuniary loss.

55.     By reason of the Decedent's wrongful death, the Decedent's Estate has been damaged in the amount of ONE HUNDRED MILLION ($100,000,000.00) MILLION DOLLARS.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (FEDERAL LOSS OF CONSORTIUM CAUSE OF ACTION)

56.    The Plaintiffs repeat, reiterate, and re-allege the allegations contained in paragraphs " 1" through " 55" as if fully set forth herein.

57.    That as a result of the defendants' violation of the Fourteenth Amendment to the United States Constitution and of Title 42 Section 1983, the Decedent was caused to suffer great pain and wrongfully die as a result of injuries sustained in the aforementioned incident.

58.    That at all times hereinafter mentioned, Plaintiff **LEONARD RAMEN** was the spouse of the Decedent **NATASHA RAMEN** and as such was entitled to the society, services and consortium of his spouse, **NATASHA RAMEN**.

59.    That by reason of the foregoing, Plaintiff **LEONARD RAMEN** was deprived of the society, services and consortium of the Plaintiff **NATASHA RAMEN** and shall forever be deprived of said society, services and consortium.

60.    By reason of the above, **LEONARD RAMEN** has been damaged in the amount of TEN HUNDRED MILLION ($10,000,000.00) MILLION DOLLARS.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (STATE LOSS OF CONSORTIUM CAUSE OF ACTION)

61.    The Plaintiffs repeat, reiterate, and re-allege the allegations contained in paragraphs " 1" through " 60" as if fully set forth herein.

62.    That as a result of the defendants' violation, neglect, negligence, carelessness and reckless discharge of the duties assumed pursuant to the special relationship alleged herein, the Decedent was caused to suffer great pain and wrongfully die as a result of injuries sustained in the aforementioned incident.

63.  That at all times hereinafter mentioned, Plaintiff **LEONARD RAMEN** was the spouse of the Decedent **NATASHA RAMEN** and as such was entitled to the society, services and consortium of his spouse, **NATASHA RAMEN**.

64.  That by reason of the foregoing, Plaintiff **LEONARD RAMEN** was deprived of the society, services and consortium of the Plaintiff **NATASHA RAMEN** and shall forever be deprived of said society, services and consortium.

65.  By reason of the above, **LEONARD RAMEN** has been damaged in the amount of TEN HUNDRED MILLION ($10,000,000.00) MILLION DOLLARS.

**WHEREFORE, the Plaintiffs demand judgment against the Defendants, jointly and severally, on the FIRST CAUSE OF ACTION IN The SUM OF ONE HUNDRED MILLION ($100,000,000.00) DOLLARS, ON The SECOND CAUSE OF ACTION IN The SUM OF ONE HUNDRED MILLION ($100,000,000.00) DOLLARS, ON The THIRD CAUSE OF ACTION IN The SUM OF ONE HUNDRED MILLION ($100,000,000.00) DOLLARS, ON The FOURTH CAUSE OF ACTION IN The SUM OF ONE HUNDRED MILLION ($100,000,000.00) DOLLARS, ON The FIFTH CAUSE OF ACTION IN The SUM OF TEN MILLION ($10,000,000.00) DOLLARS, ON The SIXTH CAUSE OF ACTION IN The SUM OF TEN MILLION**

($100,000,000.00) DOLLARS, all together with the costs, disbursements, attorney' s

fees, and interest form the date of death to the present.


Dated:          NEW YORK, NEW YORK
                January 9, 2008

                                    BY: PETER PEARSON TRAUB, JR., ESQ. (6057)
                                    LAW OFFICES OF PETER P. TRAUB
                                    TRIAL COUNSEL TO STEVENS & MOSZCZYNSKI
                                    Attorneys for Plaintiff(s)
                                    LEONARD RAMEN
                                    107 Grand Street, 4th Floor
                                    New York, New York 10013
                                    (212) 966-7442
                                    Our File No. 07-0156

15

Case No.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEONARD RAMEN, as Administrator of the Estate of NATASHA RAMEN, a/k/a MOLLY
RAMEN, Deceased, AND LEONARD RAMEN Individually

       Plaintiffs,

    -against-

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, THE KINGS
COUNTY DISTRICT ATTORNEY'S OFFICE, CHARLES HYNES, THE QUEENS COUNTY
DISTRICT ATTORNEY'S OFFICE, and RICHARD BROWN

       Defendants.

## SUMMONS AND COMPLAINT

## LAW OFFICES OF PETER P. TRAUB
*Attorneys for Plaintiff*
**107 Grand Street, 4th Floor**
**New York, New York 10013**
**(212)966-7442**